[Civil No. 3118. Filed December 31, 1931.]

[6 Pac. (2d) 430.]

UNITED SANDERS STORES, INC., a Corporation, Appellant, v. C. W. MESSICK, Appellee.

324

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Messrs. Cox, Moore & Janson, for Appellee.

Mr. Herbert B. Shoemaker, Mr. Luther P. Spalding, and Mr. Floyd M. Stahl, *Amici Curiae.*

LOCKWOOD, J.—C. W. Messick, hereinafter called plaintiff, filed a suit in the superior court of Maricopa county against United Clarence Saunders Stores, Inc., a corporation, United Sanders Stores, Inc., a corporation, A. E. Sanders, L. E. Sanders, H. D. Sanders, G. C. Partee, K. C. Van Atta, and C. L. Patterson, asking, among other things, that a receiver of the corporations be appointed. Notice was duly served on all the defendants, but only the corporation last named answered. After a hearing, at which all the parties were represented, a receiver was appointed and from the order of appointment this appeal was taken by the corporation only.

There are some six assignments of error, several of which contain three or four subdivisions each, but we think the appeal can be determined by the answers to two questions of law only, and we consider these questions in their logical order. The first is whether or not the court had jurisdiction under the facts of the case to appoint a receiver. The record shows that plaintiff's complaint was filed on March 6, 1931, and an order to show cause why a receiver should not be appointed was immediately served on

defendants. On March 12th the United Sanders Stores, Inc., hereinafter called the corporation, as successor to the United Clarence Saunders Stores, Inc., filed a demurrer to the complaint and also answered. The demurrer was overruled in part and sustained in part, and a new party, Piggly Wiggly Southwestern Company, a corporation, ordered brought in. Immediately thereafter and before an amended complaint was filed, the court proceeded to take oral testimony and consider documentary evidence, and on March 19th a receiver for the corporation was appointed. The appeal was taken on March 23d "from that certain order appointing a receiver, made and entered in the above entitled cause in said court on the 19th day of March, 1931. . . . "

The statute governing the appointment of receivers reads as follows:

"The superior court or the judge thereof may appoint a receiver in an action pending, when no other adequate remedy is given by law for the protection and preservation of property, or the rights of parties therein, pending litigation in respect thereto." Section 3881, Rev. Code 1928.

It will be noted therefrom that the jurisdictional requirements are (1) that there be an action pending, and (2) that there is no other adequate remedy for the preservation of property and the rights of the parties therein pending the litigation.

Under the law, an action is commenced by the filing of a complaint, and from that time it is "pending" until there be a final judgment or an order of dismissal. *Seeger* v. *Young,* 127 Minn. 416, 149 N. W. 735; *Cain* v. *French,* 29 Cal. App. 725, 156 Pac. 518. The mere sustaining of a demurrer to a complaint is not even an appealable order; much less, then, could it be a dismissal of the action. We think, there-

fore, that it is immaterial for the purposes of this appeal whether or not the court erred in overruling the demurrers to portions of the complaint, and that it was not error to require appellants to go to a hearing on the appointment of a temporary receiver after sustaining a demurrer to certain paragraphs of the complaint. There certainly was an "action pending" within the meaning of the statute. But was there any other adequate remedy at law for the preservation of the rights of the parties? This depends to a great extent on the facts of the case, and we must, of course, in passing on this question, interpret the evidence before the court in its strongest light in favor of plaintiff. From this evidence, considered in such manner, it appears the material facts are as follows:

In October, 1928, a corporation was organized under the laws of Arizona, named "Clarence Saunders Stores, Incorporated," with a capital stock of 15,000 shares of preferred stock of the par value of $100 each, and 300,000 shares of common stock of no par value. Shortly after its organization, the Corporation Commission of Arizona authorized it to sell 1,500 shares of its preferred stock at $100 per share, and 50,000 shares of common stock at $1 per share, and further authorized it to issue to A. E. Sanders, one of defendants herein, 151,000 shares of common stock, in consideration of the transfer by him to the corporation of a license to operate food stores in Arizona and New Mexico under the name "Clarence Saunders, Sole Owner of My Name," which license he had acquired conditional upon the payment of certain future sums to Clarence Saunders Corporation, a foreign organization, and the further consideration of the transfer to the corporation of an option to purchase certain grocery-stores then operating in Tucson, Arizona, under the name of

"Cashway Markets." This stock was duly issued to A. E. Sanders, and its issuance gave him complete control of the corporation and its board of directors, at least up to an alleged transfer of the 151,000 shares of stock by him in September, 1930. The option to purchase the Cashway Markets was never exercised, and the license to operate the "Clarence Saunders, Sole Owner of My Name," stores was never transferred to the corporation by the Clarence Saunders Stores, Inc. The upshot of the situation was that A. E. Sanders had entire control of the appellant corporation, with an actual investment of little or nothing, and no consideration of real value ever passed to the corporation in exchange for the 151,000 shares of stock.

During the first year or so of its existence the corporation sold nearly a million dollars' worth of its preferred stock for cash, and paid a considerable sum as dividends thereon, and opened and operated a large number of food stores in the state of Arizona. About January 21, 1930, the articles of incorporation were amended, at which time the name was changed to "United Clarence Saunders Stores, Incorporated," and its capital stock authorized was increased to 50,000 shares of preferred stock of the par value of $100, and 500,000 shares of common stock, of no par value. On the 1st of November, 1930, at a meeting of the corporation, the name was again changed to "United Sanders Stores, Incorporated." Plaintiff claims this last change was not legally made, but for the purposes of this opinion we need not consider that question. About this time A. E. Sanders transferred his controlling interest in the corporation to "U–Save Holding Corporation," an organization apparently controlled at all times by H. D. Sanders, his brother.

On December 31, 1930, the corporation mailed a statement to each of its stockholders, showing its net worth to be just a little short of a million dollars, although it stated that due to various conditions it had always operated at a loss. It suggested therefore that there should be a new corporation formed, entitled "The Sanders Stores of America," which should be given control of four existing corporations —the United Sanders Stores, Inc., the Piggly Wiggly Southwestern Corporation, the Piggly Wiggly Yuma Company, and the U–Save Holding Corporation. On January 15th notice was sent to the different stockholders that the control of the corporation had passed to the U–Save Holding Corporation, and that all dividends would be passed for the future, but that the corporation was in a sound financial condition. Shortly thereafter the stockholders of the corporation received a letter signed by one Clarence Saunders, who was the president of the Clarence Saunders Corporation of Memphis, Tennessee, from which corporation the original license to use the title "Clarence Saunders, Sole Owner of My Name," turned in by A. E. Sanders in part payment for his 151,000 shares of common stock, had been obtained. Apparently this letter contained very severe criticism of the management of the corporation, and the latter, in a letter of February 6, 1931, endeavored to answer these criticisms. Some two weeks later the U–Save Holding Corporation wrote to all the stockholders of the United Sanders Stores, Inc., urging them to exchange their stock in the latter corporation for stock in the U–Save Holding Corporation. The offer of exchange stated in substance that the U–Save Holding Corporation already had complete control of the United Sanders Stores, Inc., but that the latter could not continue to operate with its own

resources and without assistance, and in case of dissolution there would be a very small amount left for its stockholders, and that, in case the U–Save Holding Corporation withdrew the support it had already given, the United Sanders Stores, Inc., would be eventually compelled to go into the hands of a receiver.

Taken altogether, we think the court could fairly have inferred from these facts that, at the time of organization of the appellant corporation, A. E. Sanders obtained control thereof without contributing anything of real value to its assets; that thereafter he caused a large amount of preferred stock to be sold for cash, and commenced the operation of more than twenty food stores in the state of Arizona; that at no time were such stores operated at a profit, but on the contrary practically from their inception showed a loss, but that, notwithstanding this fact, there was paid to various holders of the preferred stock dividends on their stock, not from the profits of the corporation, but out of its capital assets, the source of such dividends being concealed from existing and prospective stockholders; that such concealment was for the purpose of inducing others to purchase stock for cash so as to increase the assets of the corporation, and that the whole object, effect, and purpose of these various manipulations was to so handle the corporation and its assets that, if the operation of the stores resulted profitably, A. E. Sanders would secure the greater amount of profit, but that, if they were operated at a loss, and the corporation utterly failed, he would lose nothing thereby; that the assets of the corporation under its existing management from start to finish were being rapidly depleted, and the company was at the time of the appointment of a receiver hopelessly insolvent.

330

The whole record indicates to us that the corporation was organized and operated on the basis of "heads I win; tails you lose," and that the unfortunate holders of the preferred stock in particular were deceived through the actions of the board of directors of the corporation until deception was no longer possible, and that even then an attempt was made through the medium of various proposed and existing holding companies to persuade them to exchange stock of some value for stock of an even lesser worth, and thereby to surrender their right of saving from the wreck what little remained in actual assets of the corporation. If such be the facts, and from the record we cannot say the trial court was not justified in believing them to be so, it needs nothing further to show that no other remedy than the appointment of a receiver would preserve the rights of the parties. The court had full jurisdiction to act.

The second question for consideration is whether in making the appointment the court abused its judicial discretion. A mere review of the facts just stated answers that question in the negative.

The order appealed from is affirmed.

McALISTER, C. J., and ROSS, J., concur.